Case No. 251631 Rubicon Real Estate Holdings v. City of Pontiac, MI et al., Oro argument, not to exceed 15 minutes per side. Ms. Victor for the appellant. Good morning. Good morning. May it please the court, I'm Cindy Rhodes, Victor, on behalf of appellants, and I apologize for not standing. It's the first time in my 45 years of practice that I have not done so before this court. But I severed my tendon, so it requires me for a while yet to be here. So thank you for your accommodation and your kindness. And I'm reserving five minutes for rebuttal. This case had a number of issues that were presented. The one thing that ties them together in terms of our appeal is that the district court made factual determinations where it's not a situation that there was no evidence in the record otherwise, but rather made determinations based on certain things. And as I go through my arguments, I will go through that. First on the procedural due process argument, the court found that the district court found that there was no deprivation because the city clerk's reading of a zoning ordinance was reasonable. That's a factual determination. In this case, there's nothing to support that determination. This is one in which the city council... I'm sorry, but why is what a city code says a factual determination? That seems to me like a legal determination. No, I apologize. His actions, whether Doyle acted reasonably or not. But didn't he act... I mean, the question about whether he acted reasonably or not depends on what the code says. Correct. And the zoning ordinance had certain provisions, but this is a case where, as in all kinds of zoning ordinances, you can vary zoning through a conditional rezoning agreement. It happened here. City council passed a resolution to add the Glenwood property, my client's property, to the medical marijuana area. And then it entered the city attorney drafted and obtained the signatures of city council on a conditional rezoning agreement, making the property proper under the zoning agreement. The city clerk, Mr. Doyle, did not have any zoning experience. He was not the officer in charge of enforcing zoning. He did not work in the planning department. Is there any dispute about any of these facts? Is there any dispute between the parties about most of the things? No, I don't believe so, Your Honor. I don't think so either. So that just feels like, maybe to Judge Larson's question, it feels like it just tees up some legal questions. Whether the conduct was reasonable, whether it violated due process. Whether it violated due process is indeed a legal question, but whether or not he acted reasonably, I believe, would turn to a fact question because there's nothing. Everyone agrees on the facts, right? Yes, but there's no facts to support that it was reasonable. We don't agree that it was reasonable, particularly in light of the fact that there was a state court order that said he was wrong. That declaratory judgment telling Doyle to recognize that the Glenwood property was properly zoned and a state court order that said you must issue the conditional approvals. And yet, he went back in that same day, again issued deficiency letters requiring a whole bunch of new things in defiance of a state court declaratory judgment in my client's favor. So the record doesn't support a determination of reasonableness based on these undisputed facts. It's not disputed that the state court judgment said those things. Can I ask a question? The conditional rezoning, maybe I'm wrong about this, I thought that rezoned the property to industrial. That's what that did. But then he still needed a SEP, a special exception permit, because he was outside of the overlay district. No, that is incorrect. The conditional rezoning, if you look at the resolution and the conditional rezoning agreement, it allows for medical marijuana facilities on the Glenwood property. Including the kind that he wanted to do. Correct, including the kind for which Pharmaco and Family Roots were applying for permits.  That was all part of, and in fact, as the record shows, my clients would not have closed on the property, but for obtaining that information, they had to get that first before they closed on the property, and then they entered into all the leases and letters of intent that they had. What exactly is a special exception permit, then? They didn't need, in this case, Can you tell me what it is? A special exception permit, I'm not a specialist in city zoning, but I believe a special exception permit is where you don't have what we have here, which is where the city council allowed them to have, to make it part of the zoning, the conditional rezoning agreement, and the resolution, Resolution 2029, specifically says they can have medical marijuana facilities there. I thought that was something particular to this marijuana cultivation business. That was in addition to getting the correct zoning. No, your honor, what they did need to have for, so two completely different things. My client had to have the zoning that they got, which included the marijuana license. I mean, which included the fact that they could have medical marijuana. It did not include the marijuana license? No, so it included the ability to have marijuana businesses on the property. The actual licenses, the permits to sell, to grow and to sell, the ones for which Pharmaco and Family Roots were seeking, those permits, those are the ones for which they applied. And yes, they had to have those, but that doesn't change the zoning. In this case, Doyle wasn't saying, I don't want those specific permits. There's something that, you know, I mean, he waited a year, and then he sent a deficiency letter. Then he waited six more months, and then he waited, and then after the court ordered him to approve them, he denied them, too. He, again, still claimed they were deficient. I was sort of confused about this issue, too, so maybe that makes three of us. I thought there had to be rezoning for industrial use, and then secondarily there had to be this SEP because there was a zone, there was an overlay zone where pot growing was allowed, but this was outside of it. You're saying that was all wrapped up in the first step? Correct, and thank you for raising that. Yes, so if I can explain, there is an overlay district in which you could go in and you could do certain things. This property is outside of that. This property is outside of that. So they went to city council to get like a variance, for lack of a better word. It's not a variance, but like a variance. You have to be fairly precise about, is that different than rezoning? Yes, so they went to get a rezoning that included, I know, I'm sorry, I'm just trying to make it more clear. They went to get a rezoning that included not just industrial, but also the right to have medical marijuana facilities there. So when I look at this chart, this chart is in the city code. So I look at this chart and it says if you're in industrial, there are some kinds of marijuana businesses you can have with a special exception permit. You can have a provisioning center, a safety compliance facility, or a secure transporter. But you can't have a grower or a processor. And I thought that's what your clients wanted to be. No, Your Honor. Or their tenants wanted to be. That chart doesn't apply at all to our situation. We have a different, so you have a chart. What you can do is follow the chart or you can go to city council and get something completely new and different. I see. And this is completely new and different. They went to city council and said, we want the right to grow and sell and do everything related to medical marijuana on this property. The mechanism to do that, to vary from the chart that you have, is through a conditional rezoning agreement. And they got that. And they got that. They got that in January of 2020. And that's in the conditional rezoning agreement itself. It says that they can grow and sell and do everything related to medical marijuana. And based on that is where the state court ruled that they always had the right on the Glenwood property to be able to have a medical marijuana facility. So we have a state court finding that supports the existence and the validity of the conditional rezoning agreement. This is a general question. You know, government can be slow sometimes. I'm not sure if that's a feature or a bug. Is there a time limit, you think, that was exceeded here? That, you know, if this process takes two years, that's okay, but if it takes five? And I guess a related question is, how long was the delay here? When do you think things sort of first started in terms of us measuring, like, how long this process? So the permits, the first permit was applied for in 2019. And in January of 2020, they were approved to be a medical marijuana area, to put it that way. The delay of a year. So there's two things here in this case. One, you've got a delay of a year and a half. And the delay ends only because appellants go to state court and get a state court order that says, cut it out. We're done. You're wrong. You need to do these things. And then after that, he still continued the behavior. So you have, so the delay is unreasonable here. Just to be really precise, how long was that second delay? Approximately, altogether, you're looking at a year and a half to two years for the two participants. And while government does go more slowly, there is no evidence in the record that any other person who applied for a facility elsewhere was that long and that slow. It was not that way. It was, you know, you give your stuff, you're approved. This was not done because of Mr. Doyle being grossly overburdened. This was done because he made it clear, if you look at his presentation to city council, that he was not going to approve anything because he personally didn't think a medical marijuana facility should be on the Glenwood property despite the resolution, despite the conditional rezoning agreement, despite his lack of zoning background, despite anything else. He personally decided he wasn't going to allow any business there. That's unreasonable. All right. Ms. Victor, you've got five minutes. You could either use them now or you could save them for rebuttal. I'll save it for rebuttal. Thank you. All right. Good morning. Good morning, Your Honor. This is Michael Berger on behalf of the city and Mr. Doyle. We're here today asking that you affirm the district court's decision to grant summary judgment as to all the claims. I'll start off with the claims brought by Rubicon. You used to start with the issue about the SEP. And was your friend on the other side correct in sort of describing this as like a one-step process rather than a two-step process? My understanding. Well, I mean, we have two people here who keep saying, I don't understand the piney act. I mean, you guys are the party, so you've got to tell us, or someone's got to explain to us how this works. So there's the conditional rezoning that occurs, correct? And prior to that, in this overlay district, no one else can have medical marijuana. So that gets granted. The SEP happens at a later point. It's kind of nudged along because the conditional rezoning occurs and they need to get this SEP so that there can be marijuana processing. She says no. She says you don't need an SEP. You can either get it. One option is you get it zoned to whatever it is, industrial, mixed use, and then you follow the chart. The other option, according to her, is no, you don't do that. You get the conditional rezoning, and then you ignore this chart. The conditional rezoning just gives you everything you need all in one fell swoop, the rezoning, and it's a substitute for the SEP being outside, which you don't need because it doesn't matter that you're outside the overlay district. My understanding is the SEP was going to be provided around February 3, 2021, and we're citing the record at 63-8, page ID 1201. So it kind of goes hand in hand, is what I'm trying to say. Who decides whether to issue a special exception permit? I don't know that answer. I'm sorry. I don't know that answer, and frankly, I'm not certain that's even relevant in this particular case. You're not certain what? I don't believe it's relevant. Oh, okay. I mean, I just wonder if the same people that approve the rezoning are the same people that consider whether to issue a permit. The people that approve the rezoning is the city council. Sure. Does the city council act on special exception permits, or does somebody? It would most likely be the clerk that would end up issuing permits. That's typically the way things were working in the city of Pontiac. However, again, I don't see how that's relevant in this particular case, especially given the analysis that Judge Lawson provided. So when we're looking at, number one, the procedural due process claim, the allegation is we were deprived of our ability to collect rents on these lease agreements. So the way that we go through the elements, is there a property right? Is it deprived? And if so, was there a hearing? So in this particular case, let's assume that there was a property right in this. There was a hearing, as Judge Lawson indicated, because Rubicon's lawyers ended up providing a letter to the city saying, Hey, why is Clerk Doyle holding up and not issuing these permits to our potential tenants? Which the evidence in this case shows that he did not, because the potential tenants provided permits which were not in compliance with the code requiring to have the permits issued. The city said, fine, let's hash it out at a city council meeting, let's hear about it. Both sides presented arguments as to... But don't they also have a substantive due process claim? There is a substantive. Okay. Correct. So the hearing isn't going to fix that? Correct, but the hearing deals with the procedural due process. Substantive due process. So let's talk about that. Is it arbitrary and capricious? So this court's authority has indicated that it's nearly impossible to show that there's arbitrary or capricious or conscious shocking activities when it comes to zoning. Are we at this point talking about actions of Doyle that Doyle's alleged constitutional violations to the plaintiffs? And, I mean, obviously this is kind of confusing. It's not quite clear. Well, when he asserts qualified immunity, it's a two-step process that they have to establish a constitutional violation. Here, I guess it's in doubt, but it also has to be clearly established. Correct. And you've argued that, right? I know Judge Larson did not go that way. He ruled that there were no constitutional violations.  But we are allowed to review whether it's clearly established. Correct. Are we not? Would that be the better route here? For Clerk Doyle, yes, it would be, but there's also the... Sir, I know we've got the city's claim, too. I'm talking about Doyle right now. 100%. Yes, I agree with that analysis. And for a clearly established prong, obviously, it needs to be so clearly established that any reasonable person would know... Well, since we're all arguing about it, I think maybe it's not clearly established. I agree with that. So getting back to the city... Okay, now to the city. Okay, how do you dispose of the claims against the city, then? So it's whether there's a policy or custom, and for the substantive due process, the procedural due process, the equal protections claim, it's whether a decision maker was the moving force behind all these allegations or behind the alleged deprivation. So Clerk Doyle, he needs to make a decision on whether to issue the permits. So when it's coming down to the city, whether for the substantive due process, because that's what we were talking about, is his actions conscious shocking? No. As the district court found, he made a reasonable assessment that, hey, before I can even issue these, I need to have my zoning map reaching amended because that's what he thought needed to happen. And under the city code, which we've cited in our briefs, that's the way he interpreted it. The Oakland County Circuit Court ended up saying, hey, you're wrong. Rubicon says, hey, he's wrong. But when you're looking at conditional rezoning... But doesn't, I thought the claim was that even after the Oakland County Circuit Court ruled, he continued to delay and defy, and that maybe that shocks the court. That's the allegation that Ms. Victor is making right now. However, when you look at the timeline, it's maybe a couple days to a couple weeks, depending on whether it's Pharmaco or Family Roots, that he ends up issuing the permits permitting the marijuana businesses to occur. A couple weeks after the Oakland Circuit Court ruled?  I see. Correct. And then you also have to remember, too, there is an alternative reason why he was denying these, and it's because the applications were deficient. He had to send two to three deficiency applications each time. So it just kind of, it's coincidental that he's able to grant the applications now because they finally provide him the information that he needed under the city code. So it's not conscious shocking because, number one, the applications were deficient. Number two, he made a mistake as far as interpreting the code, which isn't conscious shocking. If that happens, as this court has found prior, municipalities, government, they're going to get sued on substantive due process claims all the time. People make mistakes. They interpret things wrong. That's why we're here, right? The city obviously didn't think so because they promoted him, right? Well, they didn't think so, but, I mean, that's what happens. Sometimes mistakes are made. So that's why the substantive due process claim correctly was dismissed. We get to the equal protections claim. You're looking at two entities. You have to find some sort of comparator. And in this case, there is no comparator. There is no business that Mr. Victor or Rubicon has been able to identify that had tenants who wanted marijuana entities to work in their property where they were granted marijuana permits. So that's the comparator that you need, someone that's relevant in all material respects. Without that, the claim fails, as the district court found. When we get to the takings claim, Judge Lawson said, hey, this is not an unreasonable delay, as we were discussing earlier. Ms. Victor says it's up to two years. We've cited cases in our brief that indicates, hey, even in a takings claim, which they allege taking is not receiving lease payments from entities, I'm not sure, number one, how a government can use a regulatory taking to prevent that, to even have a property interest and take it for governmental use. But even assuming that there is, you're looking at approximately two years, and this circuit's authority has demonstrated that that's not an exceptional amount of time for a takings claim. Now, one thing I do want to bring along here that wraps all of them up, I argued below, Judge Lawson didn't agree with me. I read the complaint as, hey, we have a property interest, and our tenants receive these marijuana permits. I don't see how they can have a property interest in receiving these permits. It would be the entities that are receiving the permits. Without that property interest, all of these claims fail. And then on top of it, there is authority that says marijuana permits are not a federally protected property right. So there's another way that I think it should have failed, and Judge Lawson disagreed with me. But I ask that you agree with me. Finally, we need to get to the First Amendment retaliation claim. This is by the Brown plaintiffs. And for them, there is this allegation that Mr. Brown owns Brown Design, but he also owns Rubicon. Rubicon is an entity that sued the city, and then he wanted to work on some other project within the city, and there's an allegation in the complaint. Someone told someone on the zoning board, hey, if Brown's involved, we're not going to approve this project. This is the evidentiary issues that happened in the case below about whether the affidavits were valid or not. We provided an affidavit from the mayor, who ended up saying, all I told anybody was I thought Mr. Brown didn't make a great presentation. I don't think he should be the face of it. The mayor himself was not mayor at the time Rubicon sued the city, so he didn't even care that Mr. Brown was somehow involved. So there's no retaliation because there's no protected activity. We've argued there's no protected activity because, number one, Brown Design was not who sued the city. Number two, there's no causal relationship. Actually, what's the significance, if any, of the state court ruling? State court basically required the city to issue the permits that were requested. That would suggest that they were wrongfully withholding them. Do we deference that decision? Does that influence our constitutional analysis? I don't think it's relevant to this case. So the city can just force parties related to permitting and zoning to go to state court and litigate there, and then when the state court finally says, okay, you get it, then you'll do it, and that's totally appropriate? No, I don't think that that's necessarily true. I think it's just if there's some sort of statutory authority that permits someone to go to court on a particular issue, that's… And they prevail. And they prevail. I don't mean the city was wrongfully denying the permitting process or revoking the permits. And that would be the process to force the city to do something that maybe it disagreed with or didn't agree. For whatever reason, it was wrong. I don't think that that necessarily means that you get to go and bring separate lawsuits claiming all these other… I'm just wondering if it informs our analysis because it's part of the continuum here. Things weren't even resolved at that point. I mean, things kept going. I don't think it informs the analysis. I don't think it matters as far as the… Why not? Why doesn't… I mean, property rights are created by state law. The state court said that you have an entitlement to these permits. You didn't issue the permits. Because we still need to be looking at whether it is a federally protected property right. And so whether the state court says, hey, under these statutes, you need to issue the permits, doesn't necessarily mean that's a federally constitutional protected property right. Sure, it's not dispositive. Exactly. But it's certainly relevant, isn't it, as to what state law requires. I'd agree with that in seeing it that way. But it's not dispositive. I think you still need to look at… I agree with you there. In any event, I was at the First Amendment argument. The last part of that is whether the mayor, even assuming he did say anything, that would somehow say you couldn't make these developments. He's not the final decision maker. As we've outlined in our brief, the city council was. So therefore, the Monell claim fails. Any questions? Any further questions? No. All right. Thank you for your time, Your Honors. Thank you. Rebuttal? Ms. Victor? Can you all hear me clearly with this like this? Okay. Thank you. Thank you so much. No problem. Going first to the procedural due process argument, there are three elements. Notice, opportunity to be heard, decision by an impartial decision maker. In this case, as brother council said, our client sent a letter to the city. There was a city council hearing at which we made a presentation, and that is where city council Doyle clearly said, I'm not recognizing what the city council did. I'm not going to issue anything. I don't believe marijuana facilities should be there. His presentation is in the record at 63-6. It's pretty clear that he's saying to the city council, I don't care what you did, I, the city clerk, am not going to recognize it, and I'm going to block this business. The important thing is element three. There was no decision by an impartial decision maker, and I'm not even saying city council was partial impartial. There was no decision. City council took no action. The minutes are attached. I believe they're 63-9. There is no decision. It was basically read and received. The city council did nothing. They didn't say, okay, we support the clerk or you're wrong, Doyle, go and do this. They did no thing. And so there is no, there was no decision that would give them the procedural due process, and there was no place for them to go otherwise other than when they went to state court because that was their only remedy, and the state court did determine that the city was wrong. We have to decide these cases separately. You've got a claim against Doyle individually, and you've got the claim against the city. As to Doyle individually, why is he not entitled to qualified immunity on the basis that the alleged constitutional violations that he committed were not clearly established? Because it is clearly established that one has property rights in a grant by the city council. Those are property rights. His failure to abide by them is breaching a clearly established right. Do you have a case on similar facts that says that? I know that's the general principle that you've said, but we usually look for authority on point under similar facts, and what's the best authority on similar facts that you can come up with? There really isn't, Your Honor, because rarely do we find someone in city who defies the rest of city government and gets away with it to the detriment of someone. Does it have to be the obvious case if we were going to look at the clearly established prong of qualified immunity? Yes. Those cases are kind of like I hitched a prisoner to a hitching post in the hot Alabama sun. Yeah, exactly, and I do appreciate that and recognize that. I think also where it's a clearly established constitutional right is where a state court orders you to do something and you defy them. That would be a violation of a clearly established constitutional right. How long did he defy the state? That day he issued more alleged, and I'm saying alleged deficiencies because they weren't deficiencies. He was making things up as we detail in our briefs. It was about three weeks to a month before he then issued a conditional approval. When does the mandate of the state court judgment take effect? Immediately. Immediately? Because it was one in which they consented to the absence of it. They consented to it. Normally a judgment is not. Twenty-one days is the normal amount, Your Honor. Yes, in Michigan. We have 21 days. You missed the 21 days. Correct, but there was no, they consented to the consent judgment. Usually I think a state court judgment could provide that it will be effective immediately, but if not, I think you're right, it's 21 days. Right, but I believe in this case that the belief on the part of everyone was that that order was going to be implemented immediately. But Judge Doyle, I mean, Clerk Doyle decided not to do that. To get to the other claims, in terms of shocking the conscience, we have the Pearson v. Granblank case which says that it's difficult to do in a non-prisoner situation. In this case, though, it should shock the conscience that someone defies city council's determination, defies the city attorney's conditional rezoning agreement, defies written documents, defies a state court decision, defies all of these things. That should shock the conscience. In terms of the equal protection, there are comparators. It's not just people who got treated differently for sitting permits. Everybody else who owns land on which they are allowed to have medical marijuana facilities was not treated the way we were. No one else was treated that way. We were the only people in the city. They all got their permits and you didn't?  We were the only people, the only property that Doyle did this to. And if he believed that there needed to be a zoning amendment or something was wrong, he could have taken action. He's the city clerk. He could have gone to planning. He could have brought an amendment. He could have done anything. Are there marijuana businesses within the overlay district? Yes, there are marijuana businesses in the overlay. Your comparators, were they in the overlay? Correct. But once we had the conditional rezoning agreement, we were the same as the overlay district. You were not until you? Until we had the conditional rezoning agreement was January 2020. And we're still, the state court order was May 2021. So it was a long, considerable period of time. But he did nothing. He did nothing except express his dislike that he didn't want a marijuana business on this property and block everything. It was his own personal thing. If he truly believed that there was something wrong and the zoning amendment needed to be amended, he would have, with his power as city clerk, he could have moved for that amendment. He did nothing. Did nothing at all. Any further questions, Judge? Oh, I'm so sorry. I'm out of time. Thank you for your time today. All right. Thank you, Ms. Vickery. Thank you. And thank you again for your consideration of allowing me to sit while I did this. Thank you. The case is submitted. You may call the next case.